CINDY A. DIAMOND (CA State Bar # 124995)
Attorney at Law
58 West Portal Avenue
# 350
San Francisco, California 94127
Tel: 408.981.6307
cindy@cadiamond.com

Attorney for Defendant
JAIME MEDINA HERNANDEZ

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JAIME MEDINA HERNANDEZ,<br><br>　　　　Defendant. | Case #: 21-CR-325-YGR<br><br>**DEFENDANT MEDINA'S SENTENCING MEMORANDUM** |

**COVER PAGE**

# TABLE OF CONTENTS

I.   INTRODUCTION AND DEFENSE RECOMMENDATION ............. 3

II.  THE CHARGES AND RELEVANT CRIMINAL CONDUCT ............3

III. THE PLEA AGREEMENT ……………………………………..………. 4

IV.  18 U.S.C. 3553 (a) FACTORS:  PROBATION WITH A PERIOD OF CONFINEMENT AT AN RRC WILL SERVE THE PURPOSES OF SENTENCING BUT NOT BE GREATER THAN NECESSARY ........ 5
   A.   Defendant's Characteristics and Circumstances …………..……. 6
   B.   18 U.S.C. 3553 Factors, Applied ……………………………..………7

VI.  CONCLUSION ……………………………………………………….... 9

## I.     INTRODUCTION AND DEFENSE RECOMMENDATION

Defendant Jaime Medina Hernandez ("Mr. Medina") has admitted culpability in a cocaine conspiracy to distribute and possession with intent to sell, during August and September 2019.  Mr. Medina was under the influence of cocaine in September 2021, when he was arrested.  He has no prior exposure to the criminal justice system whatsoever.

Since his arrest, Pretrial Services has verified that Mr. Medina has stayed drug-free.  He is employed and supports his young family through construction work.

Mr. Medina recommends the Court impose a period of probation, and an additional 180-days of confinement to be served at a Residential Re-entry Center ("RRC").  This would be a variance, below the Guideline level, justifiable by the factors listed in 18 U.S.C. § 33553 (a).

## II.     THE CHARGES AND RELEVANT CRIMINAL CONDUCT

Mr. Medina turned 25 during September of 2019.  He stands convicted of being in conspiracy to posses and purchase cocaine.  His codefendant was arrested on September 10, 2019, and was found to be in possession of 413.1 grams of cocaine.  Mr. Medina was not arrested until September 2021, shortly after a warrant was issued.  Mr. Medina had cocaine in his system when he was arrested two years after this offense.

Thereafter, Mr. Medina was supervised by Pretrial Services while on release. All drug tests indicated Mr. Medina stopped using drugs after his arrest. Mr. Medina, before and after his arrest, maintained employment in construction despite losing his job upon his arrest.  His employment has been verified.  He has never missed a court appearance.  He has had no contact with law enforcement, before his arrest or since his arrest.  He has in all ways complied with the terms of his supervised release, and in that way, has

shown the Court that he takes this matter seriously.

### III. THE PLEA AGREEMENT

The parties have reached no agreement about the sentence to be imposed for Mr. Medina. The government has agreed to recommend a sentence within the Guideline range, and Mr. Medina is free to request a downward variance.

It appears from the codefendant's sentencing memorandum, that the government had extended a probation offer to his codefendant. Doc. 54 at 2.

### III. THE GUIDELINE CALCULATIONS

Mr. Medina's total offense level is 17.

His offense level was a 19, as indicated in the PSR at 8, but he has met all requirements for safety valve relief under USSG § 5C1.2 and § 2D1.1(b)(18), and so his Total Offense Level should be reduced from 19 to 17. PSR at 8.

Mr. Medina has no criminal history and therefore has a Criminal History Level of I.

His Guideline range is 24 to 30 months.

Mr. Medina has served one-day of imprisonment following his arrest in 2021. PSR at 1.

This Court is requested to take note that the Legislature has recognized that the individual with no criminal history is different from an individual with one criminal history point. Starting in November, 2023, a person in Mr. Medina's shoes would get an additional 2-point deduction, for having being a 0-point offender. *See* 4C.1.1 [effective 11/1/2023]. If Mr. Medina were given a sentence just one month later, he would be considered to have a Total Offense Level of 15. His Guideline Range would then be 18-

24 months.

A sentence within the Guideline range here would be more severe than necessary.  Reasons are discussed in the next section of this memo, where factors relevant to a below-Guideline level variance are discussed. Additionally, any imprisonment is likely to result in designation to a private facility where undocumented non-citizens are housed.  These facilities do not have education and programing available to inmates as do prisons run by the Bureau of Prisons. Rehabilitation, job training, and drug treatment are not provided in the private prisons as they are in BOP facilities.[1]  Confinement time is both more restrictive and also, less valuable with respect to helping to direct inmates to improvements in their lives after prison.

### IV.     18 U.S.C. 3553 (a) FACTORS:  PROBATION WITH A PERIOD OF CONFINEMENT AT AN RRC WILL SERVE THE PURPOSES OF SENTENCING BUT NOT BE GREATER THAN NECESSARY.

Analysis of factors relevant to the offense and Mr. Medina's personal characteristics, 18 U.S.C. 3553 (a)(1), show that the purposes of sentencing will be well-served by placing Mr. Medina on probation, including confining him in RRC for six-months' time.

//
//
//
//

---

[1]     *See* https://www.themarshallproject. org/2017/10/17/federal-prisons-don-t-even-try-to-rehabilitate-the-undocumented .  (Copy and past, but delete the space before ".org" to use the link in browser.)

### A. Defendant's Characteristics and Circumstances

Mr. Medina, first and foremost, is a man devoted for the care and subsistence of family. He came to San Jose, where he resides, in 2011, with his common-law wife Oreyda, and their infant son. Four years later, the couple had a daughter. The impetus for the move to San Jose was so Mr. Medina could find a way to support his family.[2]

Mr. Medina worked construction, and specialized in framing work. He has served as a supervisor of work crews, taking responsibility to assemble both workers and the needed equipment, and he met his work obligations successfully. His arrest in this case in 2021 caused him to lose employment, for his employer had to follow regulations based on their own government-based contracts, but he found work with a former employer and continued with determination.[3]

While on supervised release, Pretrial Services was able to confirm Mr. Medina ceased using drugs after his arrest. His offense conduct occurred when Mr. Medina sought a way to afford to use drugs; as many others, he sold to gain some profit which he invested back into his own drug use. The cycle was broken by his arrest. Mr. Medina has successfully stopped using drugs and has stayed away from them for over two years. The effect of this arrest, and the punishment he will have to face, is devastating to his family. Mr. Medina understands that he must pay his debt to the Court, and society, for being part of a drug-sale conspiracy that enabled more drugs than just his

---

[2] Please see attached Exhibit A, a letter from Ms. Medina, written in Spanish, and a translation prepared by a certified interpreter.

[3] Mr. Medina's employment was verified when the PSR was drafted, months ago. Attached hereto as Exhibit B are some of Mr. Medina's additional paycheck stubs, from the intervening weeks. Mr. Medina has continued with his employment since it was last verified for the PSR.

own personally-used drugs, to endanger the community.  Mr. Medina has respected his obligation to the Court, his conditions of supervised release, and his obligations to support his family.  By all accounts, he is taking account for his past mistakes, and is demonstrating respect for the seriousness of the law.

### B.  18 U.S.C. 3553 Factors, Applied

Section 3553 (a)(2) lists the principle purposes of the federal sentencing law.  Each are served here. Section (a)(2)(A) says sentencing should "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Apart from the one day he was confined after his arrest, Mr. Medina has never been in custody before.  Imposition of probation with additional confinement conditions will indeed be taken as a serious restriction by Mr. Medina.  He has small children, a 9-year old son and a 5-year old daughter, with whom he spends time with daily.  Six months away from a growing young child is a significant loss in his life.  He will have time to reflect and truly understand that he can never violate the drug laws again, once he is released.  Additionally, commitment at an RRC is partially funded by the inmates. Accordingly, the 25% of his gross income that he will pay for the cost of the RRC is another penalty and punishment that Mr. Medina will experience.[4]

Section 3553 (a)(2)(B) provides that sentencing should afford "adequate deterrence to criminal conduct."  Confinement for six-months in an RRC will do just that.  It will both provide specific deterrence, by teaching Mr. Medina

---

[4]  *See* https://www.bop. gov/about/facilities/residential_reentry_management_centers.jsp .  Please omit the space before ".gov" when entering the address into a web browser.)

the seriousness of his own criminal conduct, but it will provide deterrence to people who know Mr. Medina, who will learn his has restrictions and will not be living at home for many months.  Specifically, Mr. Medina's children, who will be reminded of this event when they are older even if they do not fully understand why their father is not home for a while, will learn that the kind of mistakes their father made when he was young are mistakes they should avoid, as they grow older.

Section 3553 (a)(2)(C) sets forth that sentencing should also "protect the public from further crimes of the defendant."  Mr. Medina has shown that he has abandoned his drugs sales and use, responding appropriately to the consequence of his arrest.  He has been compliant in all respects with pretrial services.  Following his completion of his condition of confinement, Mr. Medina can continue to be supervised, and drug-tested.  There is every reason to believe that the combination of confinement and post-release supervision can help extend the protection of the public from the Mr. Medina's drug-related behavior, until a time when the Court is certain he has effectively shown his rehabilitation.

Finally, Section 3553 (a)(2)(D) states that punishment also should provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  A Residential Reentry Center is ideal for dual-purposes of confinement, with effective treatment or education needs Mr. Medina has.  Additionally, Mr. Medina's primary need, which is to support his family while he is serving a term of confinement can be addressed.  Mr. Medina's income would be reduced, as discussed above, but being able to assure his family had their basic needs met would be the least disruptive to his children, his wife, and provide the most stability possible for his family.

The law does not provide for a stern or severe sentence for the crime

Mr. Medina committed. There is room for the Court to take into account the passage of time, Mr. Medina's lack of criminal history, his post-arrest behavior including maintaining stable employment, his commitment to refrain from drug use and the sales of drugs he had been involved with prior to his arrest, and his devotion to raise his family both by financial support and his personal attention to his children. A variance here is appropriate, as the purposes of sentencing will be served without the need for a commitment to a BOP term for the Guideline-determined amount of time.

## V.   CONCLUSION

Mr. Medina respectfully requests this Court impose a term of probation, and require additional confinement of six-months at an RRC as a condition of probation, followed by a period of supervision.

DATED: September 28, 2023          Respectfully Submitted,

/s/
_____
CINDY A. DIAMOND, Esq.
Attorney for Defendant
JAIME MEDINA HERNANDEZ

# EXHIBIT A

Reciba un cordial y respetuoso saludo, a través de estas líneas deseo hacer de su conocimiento que él sr. Jaime Medina quien ha estado conmigo durante estos 11 años, puedo afirmar que es una excelente persona, solidario, buena pareja, buen hermano y amigo que ha mantenido una conducta de sólida moral, es un excelente padre comprometido con su trabajo para darle siempre lo mejor a su familia.

Ha exhibido buenas costumbres y un trato muy cortes con las personas que interactua. Yo como su pareja puedo darme cuenta del gran esfuerzo que hace todos los días por ser mejor persona y darle buen ejemplo a sus hijos.

Por este motivo le pido que tenga consideración en su sentencia ya que es el pilar de nuestro hogar.

Sin mas nada a qué referirme y esperando que esta carta sea tomada en cuenta dejo mi número de contacto 650 630 20 87

Mi nombre: Oreyda Medina

**09/21/2023**

**Exhibit A**

I am hereby sending you a cordial and respectful greeting. By means of this letter I want to let you know that Mr. Jaime Medina, with whom I have been together for the past eleven years, is an excellent person: supportive, a good partner, a good brother, a good friend. His behaviour has always been morally solid; he is an excellent father, commited to his job, always seeking to give his family the best he can.

He has demonstrated a good character and a very courteous interaction with other people. As his partner, I am aware of the great efforts he makes every single day to be a better person and to be a good example for his children.

For these reasons, I am asking you to give consideration to these facts as you determine a sentence for him, since he is the pillar that supports our home.

With nothing more to add, I close, hoping that you will take my comments into account, and I leave my contact number (650) 630-2087.

My name is Oreyda Medina

*Exhibit A*

Certified by the Administrative Office of U.S. Courts (Federal)
Certified by the State of California as a Court Interpreter
Accredited by the American Translators Association

# LUPITA ARCE

Translator ● Interpreter
English ● Spanish

4245 Ponce Drive
Palo Alto, CA  94306

Phone: (650) 856-3112
lupitaarce@yahoo.com

I, Lupita Arce, attest that I am a Spanish/English interpreter/translator. I am certified as a court interpreter by the Administrative Office of the U.S. Courts and by the State of California (ID # 01438082). I am also certified as an English/Spanish translator by the American Translators Association.

On September 23, 2023, I translated from Spanish to English a letter to the judge from Oreyda Medina pertaining to the case of Jaime Medina Hernandez (21-CR-00325-003). I hereby certify that this translation is true and correct and was performed to the best of my knowledge and ability.

*Lupita Arce*
_____
Lupita Arce

September 23, 2023
Date

*Exhibit A*

# EXHIBIT B

## WEST COAST FRAMING INC

**JAIME J MEDINA HERNANDEZ**  **Earnings Statement**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Employee ID | 100278 | Fed Taxable Income | 980.00 | Check Date | August 11, 2023 | Check Number | 1035263926 |
| Location | 5403 | Fed Filing Status | M-4 | Period Beginning | July 31, 2023 | Net Pay | 858.71 |
| Hourly | $28.00 | State Filing Status | M-4 | Period Ending | August 6, 2023 | Check Amount | 858.71 |
| | | | | | | Total Hours Worked | 35.00 |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Regular | 28.00 | 35.00 | 980.00 | 20,538.00 |
| Gross Earnings | | 35.00 | 980.00 | 20,538.00 |

| Deductions | Amount | YTD |
|---|---|---|
| No Deductions | | |

| Taxes | Amount | YTD |
|---|---|---|
| CA | 1.04 | 47.49 |
| CASDI-E | 8.82 | 184.85 |
| FITW | 36.46 | 767.28 |
| MED | 14.21 | 297.80 |
| SS | 60.76 | 1,273.35 |
| Taxes | 121.29 | 2,570.77 |

| Direct Deposits | | Type Account | Amount |
|---|---|---|---|
| No Direct Deposits | | | |

| Time Off | Available to Use | Plan Year Used |
|---|---|---|
| CA Sick | 24.00 | 0.00 |

*Exhibit B*

## WEST COAST FRAMING INC

**JAIME J MEDINA HERNANDEZ**

**Earnings Statement**

| | | |
|---|---|---|
| Employee ID | 100278 | Fed Taxable Income 1,120.00 | Check Date September 1, 2023 | Check Number 1035515002 |
| Location | 5403 | Fed Filing Status M-4 | Period Beginning August 21, 2023 | Net Pay 968.03 |
| Hourly | $28.00 | State Filing Status M-4 | Period Ending August 27, 2023 | Check Amount 968.03 |
| | | | | Total Hours Worked 40.00 |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Regular | 28.00 | 40.00 | 1,120.00 | 23,898.00 |
| Gross Earnings | | 40.00 | 1,120.00 | 23,898.00 |

| Taxes | Amount | YTD |
|---|---|---|
| CA | 4.12 | 59.85 |
| CASDI-E | 10.08 | 215.09 |
| FITW | 52.09 | 923.55 |
| MED | 16.24 | 346.52 |
| SS | 69.44 | 1,481.67 |
| Taxes | 151.97 | 3,026.68 |

**Deductions**

No Deductions

**Direct Deposits**

No Direct Deposits

| Time Off | Available to Use | Plan Year Used |
|---|---|---|
| CA Sick | 24.00 | 0.00 |

*Exhibit B*

*Exhibit B*

**WEST COAST FRAMING INC**

**JAIME J MEDINA HERNANDEZ**  **Earnings Statement**

| | | |
|---|---|---|
| Employee ID | 100278 | Fed Taxable Income | 1,036.00 | Check Date | September 8, 2023 | Check Number | 1035609674 |
| Location | 5403 | Fed Filing Status | M-4 | Period Beginning | August 28, 2023 | Net Pay | 903.10 |
| Hourly | $28.00 | State Filing Status | M-4 | Period Ending | September 3, 2023 | Check Amount | 903.10 |
| | | | | | | Total Hours Worked | 37.00 |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Regular | 28.00 | 37.00 | 1,036.00 | 24,934.00 |
| Gross Earnings | | 37.00 | 1,036.00 | 24,934.00 |

| Taxes | Amount | YTD |
|---|---|---|
| CA | 2.27 | 62.12 |
| CASDI-E | 9.32 | 224.41 |
| FITW | 42.06 | 965.61 |
| MED | 15.02 | 361.54 |
| SS | 64.23 | 1,545.90 |
| Taxes | 132.90 | 3,159.58 |

| Deductions | Amount | YTD |
|---|---|---|
| No Deductions | | |

| Direct Deposits | Type Account | Amount |
|---|---|---|
| No Direct Deposits | | |

| Time Off | Available to Use | Plan Year Used |
|---|---|---|
| CA Sick | 24.00 | 0.00 |