ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5080
    FAX: (408) 535-5066
    jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 21-00325 YGR |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| JAIME MEDINA HERNANDEZ, | Sentencing Date: October 5, 2023<br>Time: 2:00 p.m. |
| Defendant. | |

## I. INTRODUCTION

Jaime Medina HERNANDEZ ("HERNANDEZ") pled guilty to Count Four of the Indictment and admitted to conspiring to distribute and possess with the intent to distribute Cocaine. HERNANDEZ has zero criminal history points, which results in a Criminal History Category of I. Moreover, HERNANDEZ has fulfilled all the requirements of U.S.S.G. § 5C1.2 (a)(1)-(5), now that he has truthfully debriefed with the government within the meaning of § 5C1.2 (a)(1)(5). Accordingly, HERNANDEZ's base offense level is 22, minus 2 for safety Valve, and minus another 3 for acceptance of responsibility, making his total offense level 17.  With a Criminal History Category of I, HERNANDEZ's Guidelines range is now 24-30 months.  Accordingly, for the reasons discussed below, the government recommends a sentence of 24 months imprisonment, 3 years of supervised release, and a

$100 special assessment.

## II.     FACTS

This case arose out of an FBI investigation into criminal street gangs operating in the Northern District of California.  On two separate occasions, the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA"), utilizing a confidential informant who was part of the FBI street gang investigation, conducted a controlled purchase of methamphetamine and/or heroin from an individual named Jaime ONTIVEROS ("ONTIVEROS").  These controlled purchases let up to a DEA T-III attempting to target ONTIVEROS' source of supply, among other people.  Of relevance to this case, the T-III interceptions included the following:

- April 4, 2019 through May 3, 2019 (wire only), utilized by ONTIVEROS (408-648-3514 / TT20).  ONTIVEROS (user) and HERNANDEZ were intercepted on this line.
- August 14, 2019 through September 12, 2019 (wire and electronic), utilized by HERNANDEZ (408-757-3075 / TT25).  HERNANDEZ (user), ONTIVEROS and Clemente Garcia BARRAZA ("BARRAZA") were intercepted on this line.

During the interception of HERNANDEZ's phone in September 2019, several intercepted calls led agent to believe that ONTIVEROS had ordered cocaine from HERNANDEZ and that BARRAZA was going to deliver it to HERNANDEZ's residence.  Agents conducted a traffic stop and recovered approximately 413.1 grams of cocaine from BARRAZA's vehicle.  These interceptions and seizure are detailed below.

### A.     Seizure of Cocaine on September 10, 2019

On September 10, 2019, during the interception of HERNANDEZ's phone, at approximately 1:28 p.m., agents intercepted a text message conversation between HERNANDEZ and ONTIVEROS that consisted of the following:

ONTIVEROS: "4 ½ at 4."

ONTIVEROS: "Soda"

ONTIVEROS: "Let me know"

HERNANDEZ: "Ok"

ONTIVEROS: "As soon as you are ready.  The sooner, the better"

At approximately 2:17 p.m., HERNANDEZ called BARRAZA. HERNANDEZ asked for "big saw and a little one," to be brought to the AutoZone.

At approximately 3:10 p.m., ONTIVEROS called HERNANDEZ. HERNANDEZ told ONTIVEROS around "4:00 to 4:30." ONTIVEROS asked HERNANDEZ to call him when he was ready so he could go over to the park.

At approximately 3:21 p.m., BARRAZA departed his residence.

At approximately 3:23 p.m., HERNANDEZ called BARRAZA, and asked if BARRAZA could stop by HERNANDEZ's residence.

Agents had been conducting surveillance of HERNANDEZ and BARRAZA in connection with the wiretap. Agents were able to locate BARRAZA's car, a brown Crown Victoria. At the request of the agents, a marked police car, conducted a traffic stop of BARRAZA's vehicle. A subsequent search recovered approximately 413.1 grams of cocaine from BARRAZA's vehicle. BARRAZA was later released to protect the integrity of the wiretap.

At approximately 5:07 p.m., ONTIVEROS called HERNANDEZ. During the conversation, HERNANDEZ told ONTIVEROS that he (possibly BARRAZA) was not answering (his phone) and had not arrived yet either. ONTIVEROS asked what car he (possibly BARRAZA) was driving and if he (possibly BARRAZA) had a brown Crown Victoria. HERNANDEZ said yes. ONTIVEROS said he (possibly BARRAZA) was "stuck" (possibly being held by the cops) over by the hotel. HERNANDEZ said he (possibly BARRAZA) was messed up now. No further relevant calls were intercepted.

## III. DISCUSSION

### A. Sentencing Guidelines

The government calculates the Guidelines as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1 (a)(5) and (c)(9) | 22 |
| Special offense characteristics<br>   Safety Valve eligible, U.S.S.G. §§ 2D1.1(b)(17), 5C1.2 | -2 |
| Adjustments for role in offense | None |
| Acceptance of Responsibility, § 3E1.1 | -3 |
| Total Offense Level | 17 |
| Criminal History Category (0 points) | I |
| Total Range (in months) | 24-30 |

The above Guideline offense level calculation is correct and consistent with the facts and the law. HERNANDEZ's offense results in a base offense level of 22. See U.S.S.G. § 2D1.1(a)(5), (c)(9). In addition, the defendant accepted responsibility and timely notified the government of his intention to plead guilty, and the government now moves for the full 3-level reduction in the defendant's offense level. See U.S.S.G. § 3E1.1(a), (b). The government also agrees that HERNANDEZ meets the requirements for safety valve eligibility. Accordingly, he is entitled to a 2-level reduction in his offense level, *id.* § 2D1.1(b)(17).

### B. A 24-Month Sentence is the Reasonable and Appropriate Sentence in this Case

The government respectfully requests that the Court impose a Guidelines sentence of 24 months of imprisonment. This sentence is supported by the § 3553(a) factors, in particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public.

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, and protect the public from the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

The seriousness of the offense weighs in favor of a sentence of 24 months of imprisonment. Unlike BARRAZA, HERNANDEZ acted as a source of supply for cocaine. The circumstances of HERNANDEZ's offense conduct also suggests that he has significant knowledge of and involvement in drug trafficking. Until law enforcement seized the cocaine from BARAZZA, HERNANDEZ execution of the cocaine delivery operation could be best described as smooth and sure. First, ONTIVEROS

contacted HERNANDEZ on September 10, 2019, asking for a specific quantity of cocaine to be delivered in short about of time. HERNANDEZ quickly agreed. During the text conversation between ONTIVEROS and HERNANDEZ, the two even used code words such as "soda," which was likely referring to cocaine. Soon thereafter, HERNANDEZ contacted BARAZZA and directed him to obtain and deliver the cocaine to HERNANDEZ. During these conversations, HERNANDEZ continued to used code words such as "big saw and a little one," thereby showing his knowledge of code words used by drug traffickers. Up until the seizure, there were no missteps, no hesitation. Finally, HERNANDEZ was able to obtain the requested amount of cocaine with only a few hours of notice. The ability to obtain narcotics on short notice is a hallmark of a serious and well-positioned drug trafficker, not a casual or occasional dealer. Each of these facts is an aggravating factor that increases the seriousness of the offense conduct and suggest that HERNANDEZ was an experienced drug trafficker. Given that HERNANDEZ is more culpable than BARAZZA, the government is recommending a sentence of 24 months of imprisonment.

Given HERNANDEZ's lack of criminal history, the government understands that a 24-month sentence is substantial. The government also recognizes that HERNANDEZ has suffered from an addiction to cocaine for many years. Finally, HERNANDEZ has a consistent history of legitimate employment and has the support of his family. Accordingly, the government therefore recommends a sentence at the low end of the Guidelines.

## IV. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence HERNANDEZ to a sentence of 24 months of imprisonment.

DATED: September 28, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*Jeffrey A. Backhus*
JEFFREY A. BACKHUS
Assistant United States Attorneys